### UNITED STATES DISTRICT COURT

### MIDDLE DISTRICT OF LOUISIANA

**ROBERT WILLIAMS**                                **CIVIL ACTION**

**VERSUS**

**DARREL VANNOY, ET AL.**                    **NO. 21-00139-BAJ-EWD**

### RULING AND ORDER

Plaintiff Robert Williams, an inmate incarcerated at the Louisiana State Penitentiary (LSP), pursues constitutional claims of excessive force and deliberate indifference to his medical needs—and related state law claims—against the Louisiana Department of Public Safety and Corrections (DPSC) and multiple LSP Corrections Officers, arising from an altercation on March 3, 2020. Now, the remaining Defendants—DPSC, LSP Lieutenant Colonel Vincent Knight, and LSP Captain Eric Turner—move for summary judgment. For reasons below, Defendants' motion will be granted in part, leaving for trial only Plaintiff's individual capacity excessive force claims against Lt. Col. Knight and Capt. Turner.

## I.    BACKGROUND

### A. Summary Judgment Evidence

The facts set forth below are drawn from the competent summary judgment evidence submitted in support of the parties' pleadings.

On March 3, 2020, Plaintiff, a prisoner at LSP, was housed in LSP dorm Falcon 1. (Doc. 43-3, *hereinafter* "Williams Depo.," at 11:24). Plaintiff "suffer[s] with addiction," (*id.* at 16:10-13), and admits that on this date he was "intoxicated," (*id.* at 12:15), due to having "smoked … synthetic marijuana," (*id.* at 17:19-21).

1

About an hour after getting high, (*see id.* at 17:19-21), Plaintiff confronted non-party Sgt. "K. Donaldson" to address "something weird" she allegedly told another prisoner housed in Falcon 1, (*id.* at 12:8). In Plaintiff's words:

> I just attempted to, like, get her attention to speak to her and find out what was going on. And she just hit the beeper and ran out of the dorm, you know. I kind of went behind her to stop her. But everything was turned around, you know, like I, you know, had just -- I was, like, intoxicated and chased out of the dorm.

(*Id.* at 12:9-15).

By "hitting the beeper," Sgt. Donaldson summoned Defendants Lt. Col. Knight and Capt. Turner to Falcon 1. What happened next is the subject of dispute between the parties.

Lt. Col. Knight and Capt. Turner each offer virtually identical declarations stating that upon their arrival, Plaintiff "appeared to be high/intoxicated," and "was acting erratically," prompting them to immediately "place [him] in handcuffs for officer safety." (Doc. 43-6, *hereinafter* "Turner Decl.," ¶¶ 5-6; Doc. 43-7, *hereinafter* "Knight Decl.," ¶¶ 5-6). Thereafter, by their own accounts, Knight and Turner attempted to escort Plaintiff from Falcon 1 to the medical center, at which point Plaintiff "became combative and resistant. He was yelling, and he was trying to kick, bite, and spit on the officers present." (Turner Decl. ¶¶ 7-8; Knight Decl., ¶¶ 7-8). According to Knight and Turner, Plaintiff's continued belligerence required an escalating response: first they "shackled" Plaintiff's feet; then, when Plaintiff still refused "several direct verbal orders to stop acting out and resisting," they "were forced to take [Plaintiff] to the ground," and "hold him down until medical arrived." (Turner Decl. ¶¶ 9-11; Knight Decl., ¶¶ 9-11). Knight and Turner state that after

2

"medical arrived," Plaintiff was transported by ambulance to the medical treatment center. Each insist that their use of force was consistent with LSP policy, and "necessary to gain and maintain control of [Plaintiff]." (Turner Decl. ¶¶ 12-14; Knight Decl., ¶¶ 12-14).

Not surprisingly, Plaintiff offers a divergent view of his March 3 encounter with Lt. Col. Knight and Capt. Turner, insisting at his deposition that Knight and Turner attacked him without provocation, continued beating him even after he was cuffed and shackled, and stopped only after they "tossed" him into the back of the ambulance:

> So when [Lt. Col. Knight and Capt. Turner] responded to the call and entered the dorm, you know, I just tried -- I just tried to talk to them. And they just grabbed me, threw me down on the floor and, like, tortured me. I mean, tortured. I kind of, like, blacked out about, like, two times. And then after that, you know, they kind of put their handcuffs on me. We exited Falcon 1. I still attempted to talk to them, and that's when I all I felt was punches. You know, I still got this cut up under my eye, you know, and you can see it, you know.

> And some things from that night I don't remember, you know, because of what I was going through, you know, I -- I blacked out, man, several times, you know, but I just remember just being thrown in the medical van.

> And I don't know -- I don't even remember the whole walk, where the -- the whole escort to the sally port and to the medical van, you know. I must have -- I must have blacked out. … It's just I remember being, like, tossed in a van. And that's, like, when my consciousness had come back.

(Williams Depo. at 12:16-13:15).

When asked to explain what he meant by "tortured," Plaintiff responded:

> I mean, I mean, it was about three or four of them, man. They was on top of me, man, pushing my body like they was trying to push the life out me, you know.

> And if you get the footage, you'll see me laying down face first unconscious. Twisting my fingers, my arms, my elbows. And when you review this footage, wherever they land their elbow at, they apply pressure. Wherever they put their knee at, they apply pressure.
>
> You know, it may not look like it, but zoom in and look at it, man, they was out to really hurt me. I hadn't done anything, man, anything, you know. And like I said, I blacked out one time down there, man.

(Williams Depo. at 22:9-23).

Plaintiff suffered multiple lacerations to his face (among other injuries) as a result of the March 3 altercation, including one near his eye that required staples to close. (Doc. 43-4).

### B. Procedural History

Plaintiff initiated this action on March 3, 2021, alleging constitutional claims of excessive force and deliberate indifference to his medical needs, and tag-along state law claims of negligence, battery, and employer liability. (Doc. 1).

Now, remaining Defendants DPSC, Lt. Col. Knight, and Captain Turner move for summary judgment,[1] arguing that Plaintiff's claims against DPSC are barred by the Eleventh Amendment; that qualified immunity shields Lt. Col. Knight and Capt. Turner from Plaintiff's constitutional claims; that Plaintiff has not produced sufficient evidence to sustain his claims of battery and negligence; and that, in any event, Knight and Turner are "immune from state law claims of battery and negligence based upon the discretionary immunity doctrine." (Doc. 43).

Plaintiff opposes Defendants' motion *in part*, expressly conceding to dismissal

---

[1] Previously, Plaintiff stipulated to dismissal of original named Defendants LSP Warden Darrel Vannoy and DPSC Secretary James LeBlanc. (*See* Doc. 35).

4

of all claims against DPSC, and all official capacity claims against Knight and Turner, (Doc. 63 at 1), and offering no argument to support (and therefore abandoning[2]) his medical indifference, negligence, and battery claims against Knight and Turner, (*see generally id.*). By contrast, Plaintiff argues that a material dispute precludes summary disposition of his individual capacity excessive force claims against Lt. Col. Knight and Capt. Turner.

## II.    LAW AND ANALYSIS

### A. Standard

Federal Rule of Civil Procedure ("Rule") 56(a) provides that the Court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> In considering a motion for summary judgment, the district court must view the evidence through the prism of the substantive evidentiary burden. All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. If the record, viewed in this light, could not lead a rational trier of fact to find for the nonmovant, summary judgment is proper. On the other hand, if the factfinder could reasonably find in the nonmovant's

---

[2] Generally speaking, a party waives an issue by failing to brief it. *See United States v. Martinez*, 263 F.3d 436, 438 (5th Cir. 2001). Moreover, the Local Civil Rules require that parties support their arguments with "a concise statement of reasons ... and citations of authorities," M.D. La. LR 7(d), and this Court has repeatedly admonished that it will not speculate on arguments that have not been advanced, or attempt to develop arguments on a party's behalf. *See Doe v. Bd. of Supervisors of Univ. of Louisiana Sys.*, 650 F. Supp. 3d 452, 477 n.13 (M.D. La. 2023) (Jackson, J.) (citing authorities). Pursuant to the Court's Local Rules, and consistent with the general rule that a party's failure to brief an issue acts as a waiver, the Court determines that Plaintiff has abandoned his medical indifference claims *and* his state law negligence and battery claims against Lt. Col. Knight and Capt. Turner. *E.g.*, *Clark v. LeBlanc*, No. 19-cv-00512-BAJ-SDJ, 2023 WL 2655725, at *7 n.4 (M.D. La. Mar. 27, 2023) (ruling that plaintiff abandoned claims not addressed in opposition to defendants' motion for summary judgment).

favor, then summary judgment is improper.

Finally, even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that a better course would be to proceed to a full trial.

*Kunin v. Feofanov*, 69 F.3d 59, 61–62 (5th Cir. 1995) (quotation marks, alterations, and citations omitted); *see also Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (same); *accord Black v. J.I. Case Co.*, 22 F.3d 568, 572 (5th Cir. 1994) ("The Supreme Court has recognized that, even in the absence of a factual dispute, a district court has the power to 'deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial.'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Importantly, when conducting the summary judgment analysis, the Court is prohibited from evaluating the credibility of the witnesses, weighing the evidence, or resolving factual disputes. *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021). Put differently, the Court may *not* credit certain witnesses' testimony over other evidence: "By choosing which testimony to credit and which to discard, a court improperly weighs the evidence and resolves disputed issues in favor of the moving party. Doing so is tantamount to making a credibility determination, and—at this summary judgment stage—a court may make no credibility determinations." *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 245 (5th Cir. 2016) (quotation marks, alterations, and citations omitted).

### B. Analysis

After Plaintiff's concessions, the only claims left to decide are his individual capacity excessive force claims against Lt. Col. Knight and Capt. Turner. Knight and

Turner seek dismissal of these claims solely on the basis of qualified immunity. (Doc. 43-1 at 9-17).

The qualified immunity doctrine turns the traditional summary judgment burden on its head, requiring Plaintiff—the *non-moving* party—to "demonstrate the inapplicability of the defense."[3] *Rogers v. Jarrett*, 63 F.4th 971, 975 (5th Cir. 2023) (quotation marks omitted). To meet his burden, Plaintiff must "(1) raise a fact dispute on whether his constitutional rights were violated by the defendants' individual conduct, and (2) show those rights were clearly established at the time of the violation." *Id.* (quotation marks omitted). Still, even when conducting a qualified immunity analysis, the Court views all evidence and makes all reasonable inferences in the light most favorable to Plaintiff. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

### a. Plaintiff has raised a fact dispute on whether his constitutional rights were violated

The Eighth Amendment protects prisoners from excessive force at the hand of corrections officers. *Cowart v. Erwin*, 837 F.3d 444, 452 (5th Cir. 2016).

---

[3] The qualified immunity defense remains "the law of the land." *Jamison v. McClendon*, 476 F. Supp. 3d 386, 409 (S.D. Miss. 2020) (Reeves, J.) (reviewing the history and expansion of the qualified immunity doctrine, and calling for its elimination). But for how long? Scholars and at least one jurist of the U.S. Court of Appeals for the Fifth Circuit have recently called for its ouster because the doctrine is founded on a legal fiction derived from a reconstruction-era scrivener's error that removed a determinative 16-word clause from the published version of 42 U.S.C. § 1983. *See* Alexander A. Reinert, *Qualified Immunity's Flawed Foundation*, 111 CAL. L. REV. 201 (2023). Restored to its proper place, this clause "unequivocally negate[s] the original interpretive premise for qualified immunity." *See Rogers v. Jarrett*, 63 F.4th 971, 979 (5th Cir. 2023) (Willett, J., concurring). It is not this Court's role to cast aside qualified immunity here, particularly absent any argument from the parties. Indeed, only the Supreme Court can definitively "overrule" the defense. *Id.* at 981. For now, the undersigned commends Professor Reinert's scholarship, and joins Judge Willett's call for the Supreme Court to "definitively grapple with § 1983's enacted text and decide whether it means what it says—and what, if anything, that means for § 1983 immunity jurisprudence." *Id.*

> In evaluating excessive force claims under the Eighth Amendment, the
> core judicial inquiry is whether force was applied in a good-faith effort
> to maintain or restore discipline, or maliciously and sadistically to cause
> harm. Though the focus of this standard is on the detention facility
> official's subjective intent to punish, intent is determined by reference
> to the well-known *Hudson* factors—the extent of injury suffered, the
> need for application of force, the relationship between that need and the
> amount of force used, the threat reasonably perceived by the responsible
> officials, and any efforts made to temper the severity of a forceful
> response. The amount of force used must be more than *de minimis*,
> provided that the use of force is not of a sort repugnant to the conscience
> of mankind. A plaintiff need not show significant injury, although the
> extent of the injury may supply insight as to the amount of force applied.

*Id.* at 452–53 (quotation marks, alterations and footnotes omitted). Applying these

principles, it is well-established in the Fifth Circuit that force used against a passive

and non-threatening inmate is excessive. *E.g.*, *id.* at 449 (corrections officers' force

was excessive where "at no point did [the prisoner plaintiff] physically threaten the

officers or fight back"); *Gomez v. Chandler,* 163 F.3d 921, 922 (5th Cir. 1999)

(reversing summary judgment dismissing prisoner plaintiff's excessive force claim

and remanding for trial where plaintiff's declaration established a basis to conclude

that corrections officers "attacked him without provocation"). Further, "courts have

frequently found constitutional violations in cases where a restrained or subdued

person is subjected to the use of force." *Cowart*, 837 F.3d at 454 (quoting *Kitchen v.*

*Dall. Cty.*, 759 F.3d 468, 479 (5th Cir. 2014)).

Here, applying the *Hudson* factors, Plaintiff has plainly produced sufficient

evidence to establish a fact dispute regarding whether Lt. Col. Knight and Capt.

Turner used excessive force against him on March 3, 2020. First, Plaintiff has

produced medical records establishing that, among other injuries, he suffered

multiple lacerations to his face, including one that required staples. These injuries

8

easily overcome the Fifth Circuit's *de minimus* threshold. *See Comeaux v. Sutton*, 496 F. App'x 368, 371 (5th Cir. 2012) (minor injuries such as "abrasions" or a "bruised lip" are sufficient to defeat summary judgment and sustain an actionable excessive force claim (discussing authorities)).

Second, a dispute plainly exists regarding the need for force. Knight and Turner state that when they approached Plaintiff to remove him to the medical center, he appeared intoxicated and was "acting erratically," prompting them to put him in handcuffs, at which point Plaintiff became "combative," requiring escalated force. Plaintiff admits that he was intoxicated, but claims that he was compliant and that Knight and Turner immediately "grabbed me, threw me down on the floor and, like, tortured me," and that it only got worse from there. At this stage, the Court is not permitted to decide which of these competing accounts is true. *Heinsohn*, 832 F.3d at 245; *e.g.*, *Comeaux*, 496 Fed. Appx. at 373-74 (rejecting defendants' qualified immunity defense at summary judgment where plaintiff prisoner's testimony established a basis to conclude "that he did not resist the defendants, leaving the defendants no reason to use force"); *Brown v. Lippard*, 472 F.3d 384, 386-87 (5th Cir. 2006) (same, where summary judgment evidence established a basis to conclude that at the time of the alleged attack, the plaintiff prisoner's "behavior [w]as cooperative and unthreatening").

Essentially the same evidence establishes a genuine dispute as to the third and fourth *Hudson* factors—the relationship between the need and the amount of force used, and the threat reasonably perceived by Knight and Turner, respectively.

Crediting Plaintiff's account, he merely tried to talk to Knight and Turner when they arrived at Falcon 1, and posed no threat, but was immediately thrown to the ground and thereafter suffered repeated body blows and other assaults even *after* he was handcuffed and shackled. True, Plaintiff admits he was "intoxicated" at the time, which may ultimately support a finding that Knight and Turner reasonably perceived at least some threat when they arrived at Falcon 1. But the mere fact of Plaintiff's intoxication does not defeat his excessive force claim, because even in his intoxicated state Plaintiff unquestionably was entitled to constitutional protection from more force than was necessary to "maintain or restore discipline." *Cowart*, 837 F.3d at 452; *e.g.*, *Geils v. Patin*, 941 F. Supp. 2d 722, 729 (N.D. Tex. 2012) (Boyle, J.) (sustaining detainee's Eighth Amendment excessive force claim, and rejecting defendant's qualified immunity defense at summary judgment, despite defendant's testimony that he employed force in response to plaintiff's "alcohol-induced lack of body control," intoxication, and belligerence, where plaintiff's evidence established that he "did not attempt to flee or engage in physical contact with [defendant] at any time"). Here, again, accepting Plaintiff's testimony at face value, a basis exists to conclude that he was passive and compliant, but was nonetheless thrown to the ground, punched, pressed, dragged, and contorted, even after he was cuffed and shackled.

Finally, at the fifth *Hudson* factor, Plaintiff's testimony establishes a basis to conclude that Knight and Turner made no attempt whatsoever to temper the severity of their forceful response. To the contrary, according the Plaintiff, Knight and Turner immediately threw him to the ground and thereafter escalated their assault, even

10

when Plaintiff was restrained in handcuffs and shackles.

In sum, Plaintiff and Defendants offer wildly divergent accounts of their March 3 encounter, each supported by their own summary judgment evidence. "This case quite literally presents a quintessential example of the classic 'he said, [they] said' swearing match, making it obvious that [Knight's and Turner's] summary judgment motion turns entirely on a genuine issue of fact that clearly is material." *See Faulkenbery v. Lee*, 307 F. App'x 813, 814 (5th Cir. 2009) (rejecting defendant's qualified immunity defense at summary judgment). The result, for present purposes, is a genuine dispute as to whether Lt. Col. Knight and Capt. Turner deployed excessive force against Plaintiff on March 3, 2020. Plaintiff has carried his burden at the first step of the qualified immunity analysis. *E.g.*, *supra*, *Cowart*, 837 F.3d at 454; *Comeaux*, 496 Fed. Appx. at 373-74; *Brown*, 472 F.3d at 386-87.

### b. Plaintiff's constitutional rights were clearly established at the time of the alleged violation

This much *is* clear: when they encountered Plaintiff, Lt. Col. Knight and Capt. Turner unquestionably had "fair warning" that permissible force was limited to that which was necessary "to maintain or restore discipline," and that they were prohibited from using force "maliciously and sadistically to cause harm." *Cowart*, 837 F.3d at 452 (quotation marks omitted). Moreover, Knight and Turner would have known that it was objectively unreasonable to use force against a passive and non-threatening inmate, particularly after that inmate is "restrained or subdued." *Id.* at 454 (quoting *Kitchen*, 759 F.3d at 479). As above, the circumstances of the March 3 encounter—and particularly whether Plaintiff's interaction with Knight and Turner

11

was passive or resistant—requires a credibility determination regarding competing accounts of what occurred in the Falcon 1 dorm. Again, the Court is not permitted to make such findings at summary judgment. *Heinsohn*, 832 F.3d at 245. Plaintiff has also carried his burden to show that the law was clearly established at the time Lt. Col. Knight and Capt. Turner deployed force against Plaintiff, and their qualified immunity defense fails at this stage. Plaintiff's excessive force claim will be submitted to the jury.

### III.    CONCLUSION

Accordingly,

**IT IS ORDERED** that the remaining Defendants' **Motion For Summary Judgment (Doc. 43)** be and is hereby **GRANTED IN PART** consistent with the relief set forth herein, leaving for trial only Plaintiff's individual capacity excessive force claims against Defendants Knight and Turner.

**IT IS FURTHER ORDERED** that Defendant Louisiana Department of Public Safety and Corrections and all remaining "Doe" defendants be and are hereby **DISMISSED AND TERMINATED** as parties to this action.

Baton Rouge, Louisiana, this 19th day of December, 2023

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**